

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00012-CR
_____

MARK HOFF, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

On Appeal from the County Court at Law
Navarro County, Texas
Trial Court No. C35612-CR, Honorable Amanda Doan Putman, Presiding

_____

February 13, 2017

## CONCURRING AND DISSENTING OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

For the reasons I will discuss, I concur with my colleagues that the trial court properly rejected the first contention appellant Mark Hoff presents in this appeal from his conviction following a guilty plea for tampering with physical evidence. All members of the panel agree with the overruling of appellant's first issue. I would sustain appellant's second issue, and would thus reverse his conviction and remand the tampering charge for a new trial. I therefore dissent from the court's judgment affirming the conviction.

Background

Appellant was indicted for the felony offense of tampering with physical evidence.[1] The indictment alleged that, knowing that the offense of possession of a controlled substance had been committed, appellant intentionally or knowingly concealed a controlled substance, methamphetamine, with intent to impair its availability as evidence. He filed a pretrial motion to suppress evidence, including his statements to police, obtained during a search of his home.

At a hearing on appellant's motion, the trial court heard the testimony of Ricky Ragan, a narcotics investigator with the Navarro County Sheriff's Office Criminal Investigation Unit. Ragan testified he was among four officers who executed a warrant authorizing a search of appellant's home. The warrant was obtained after a confidential informant told officers he saw appellant with methamphetamine at the residence. When the officers entered the residence, they found appellant in his bedroom, where they also found an amount of methamphetamine, a pipe and some prescription pills.

Ragan testified he was made aware that officers entering appellant's bedroom "observed him, what they believed, to ingest methamphetamine." When they saw the drugs and appellant's actions, they took him into custody and placed him in handcuffs. Asked by the prosecutor why they detained appellant at that point, Ragan responded, "To further the investigation so that no further evidence was destroyed." The questioning continued:

> Q. Okay. Did y'all believe that his actions indicated that he might be destroying evidence?

---

[1] TEX. PENAL CODE ANN. § 37.09(c), (d) (West 2014).

A. Yes, we did.

* * *

Q. Okay. Was there ever a time that you – that Mr. Hoff said something to you about his actions there in the bedroom?

A. Yes.

Q. Can you tell us about that?

A. While speaking with him, he had told me that when the officers entered the room; that's what he had done, he had ingested the methamphetamine.

Q. Okay. What were you speaking to him about?

A. The -- the ingestion of the methamphetamine.

Q. Why were you talking to him about that?

A. I was trying to figure out, if that's what he did and why he had done that.

Q. Okay. And if he -- if he had ingested drugs or methamphetamine, why was that important information for you to know?

A. For -- first off, for medical reasons, you know, on himself and as far as destruction of evidence. Things of that nature.

In response to later questions, Ragan confirmed that he admonished appellant of his *Miranda*[2] rights before questioning him, appellant's statements were made at the residence in response to his questions, that Ragan was "attempting to confirm that, that's what he had done is ingest methamphetamine," and that his purpose for questioning appellant was "for medical purposes, but also to see if he had tampered with evidence." No recording of appellant's statement to Ragan was made.

After taking the motion to suppress under advisement, the trial court denied the motion. Appellant later entered an open plea of guilty to the tampering charge, and to

---

[2] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 692 (1966).

the methamphetamine possession charge that also resulted from the search. After sentence was assessed as noted, the trial court certified appellant's right of appeal.

Analysis

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State,* 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford almost total deference to a trial court's determination of historical facts. *Valtierra*, 310 S.W.3d at 447. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* The trial court is entitled to believe or disbelieve all or part of a witness's testimony, even if that testimony is uncontroverted. *Id.* We apply a *de novo* standard of review to a trial court's application of the law of search and seizure to the facts, and we will sustain the trial court's ruling if it is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* at 447-48.

Issue One – Search Warrant Affidavit

Appellant contends the trial court erred in denying his motion to suppress for two reasons. The first is the same complaint he raised in a separate appeal of his conviction for methamphetamine possession, in which he argued the search warrant affidavit failed to establish probable cause for issuance of the warrant. We have issued our opinion in that companion appeal, and have affirmed the trial court's denial of appellant's challenge to the search warrant.[3] Because appellant's first issue in this

_____

[3] *Hoff v. State,* No. 07-15-00011-CR, 2017 Tex. App. LEXIS 865 (Tex. App.—Amarillo, January 31, 2017, no pet. h.). (mem. op., not designated for publication).

4

appeal raises no further ground attacking the search warrant, and for the same reasons we cited in the companion appeal, I agree that appellant's first issue should be resolved against him.

Issue Two – Article 38.22

By his second issue, appellant contends the trial court should have granted his motion to suppress his oral statement admitting he ingested methamphetamine because it was the product of custodial interrogation and was not recorded in compliance with article 38.22 of the Texas Code of Criminal Procedure.  Under section 3 of article 38.22, an oral statement of an accused "made as a result of custodial interrogation" is not admissible against the accused in a criminal proceeding unless an electronic recording of the statement is made, and the recording meets other requirements.  TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3 (West 2014).  I agree with appellant's contention.

"Custodial interrogation" under article 38.22 is consistent with the meaning of the same phrase under the Fifth Amendment.  *Thai Ngoc Nguyen v. State,* 292 S.W.3d 671, 677 n.27 (Tex. Crim. App. 2009), citing *Bass v. State*, 723 S.W.2d 687, 691 (Tex. Crim. App. 1986).  *See also Elizondo v. State,* 382 S.W.3d 389 (Tex. Crim. App. 2012). Article 38.22, by its terms, does not preclude the admission of a statement "that does not stem from custodial interrogation."  TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5.

Appellant was in handcuffs and Ragan had given him *Miranda* warnings before Ragan asked appellant if he ingested methamphetamine.  During his testimony, Ragan repeatedly affirmed appellant was taken into custody in his bedroom, and was in custody during his questioning.  The State does not dispute that appellant was in a

5

custodial status when questioned. *See Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007) (person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest) (internal citation omitted). It is undisputed also that appellant's incriminating admission was not recorded. What is thus at issue is whether appellant's statement was made in response to interrogation.

In this context, "interrogation" means "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response." *State v. Cruz,* 461 S.W.3d 531, 536 (Tex. Crim. App. 2015). The "should know" test is the general test for determining whether interrogation occurs. *Id., citing Alford v. State,* 358 S.W.3d 647, 661 (Tex. Crim. App. 2012). The test focuses on the perceptions of the suspect, not the intent of the police. *Cruz,* 461 S.W.3d at 536-37; *see also Rhode Island v. Innis,* 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980).

The Court of Criminal Appeals recently has described in *Cruz* the proper manner in which to evaluate whether an inquiry like Ragan's constituted interrogation. We first consider whether Ragan's question meets the general test for interrogation, that is whether, when Ragan asked appellant if he had ingested methamphetamine, Ragan "should have known" his question was reasonably likely to elicit an incriminating response. *Cruz,* 461 S.W.3d at 536-37. To me, the record before us readily shows that the question meets the general test. The question did not ask for biographical information but inquired about appellant's conduct. *Id.* at 538-39. The information

sought was directly incriminating,[4] and, as in *Cruz, id.* at 540, Ragan knew his question was likely to lead to an incriminating response. And it was in part designed to elicit that incriminating information.

It is necessary, then, to address the issue whether Ragan's question is subject to the "booking exception" and thus is deemed "not interrogation" because it was a "routine administrative inquiry." It is so if, under an objective standard, it "reasonably relates to a legitimate administrative concern." *Id.* at 540 (*citing Alford,* 358 S.W.3d at 659-60). To answer that question, we consider both the question's content and the circumstances under which it was asked. *Id.* at 540.

Ragan's question to appellant occurred at the location of his arrest, shortly after the time of his arrest. The question effectively asked for an admission of his guilt of the offense of tampering with evidence, one of the crimes of which Ragan suspected appellant was guilty. *See Cruz, id.* at 540. Ragan believed appellant had ingested methamphetamine, and the officer expressed a dual purpose for his question: "for medical reasons," and "as far as destruction of evidence." *Id.* at 541. There is no indication Ragan was following a standardized or routine procedure that required him to question appellant.[5] *Id.* at 542. Guided by the analysis in *Cruz,* I would conclude Ragan's question to appellant did not fall within the "booking exception," but that his

---

[4] *See Rabb v. State,* 434 S.W.3d 613 (Tex. Crim. App. 2014) (involving tampering with evidence by swallowing).

[5] As opposed, for instance, to a procedure requiring an arresting officer to seek a medical examination of an arrestee suspected of needing medical care.

7

questioning of appellant regarding his ingestion of methamphetamine constituted custodial interrogation, and was subject to article 38.22.[6]

I find support for this conclusion by comparing the question and circumstances present here with those examined by the Austin Court of Appeals in *Heiden v. State*. No. 03-07-00614-CR, 2009 Tex. App. LEXIS 2000 (Tex. App.—Austin March 25, 2009, no pet.) (mem. op., not designated for publication). Officers were dispatched to take Heiden into custody and transport him to a state hospital for a mental health examination. When he became agitated, they handcuffed him and an officer conducted a pat-down. No *Miranda* warnings were given. *Id.* at *3. When the officer felt and retrieved a prescription bottle from Heiden's pants pocket, he asked Heiden "if he was under any medication." Heiden responded, "No, that's meth." *Id.* at *4. He endeavored to suppress the statement when he later was prosecuted for its possession. Affirming the trial court's denial of the motion to suppress the statement, the Austin court held the officer's question did not constitute interrogation under *Miranda*. *Id.* at *13. The court explained that, given the purpose for the officers' presence and Heiden's agitation, the trial court could have determined the officer had reason to believe Heiden presented a threat, and that the officer asked about medication to determine Heiden's physical condition. It further held the trial court could have seen the question as "part of a routine police procedure normally attendant to taking people into custody under such circumstances." *Id.* at *20 (citations omitted). Although the *Heiden* opinion predates the *Alford* and *Cruz* opinions, I believe the court would have reached the same conclusion

---

[6] Although *Miranda* warnings were administered to appellant before the questioning at issue here, it is worth noting that a conclusion the booking exception applies here also effectively means that no article 38.22 or *Miranda* warnings were necessary. *See Thai Ngoc Nguyen,* 292 S.W.3d at 677 n.27.

had both those opinions been available to it. Our present case and *Heiden* are similar in that evidence of concern for an arrestee's medical condition is present in both. But the content of the officer's question and the circumstances of the police encounter with Heiden differ greatly from those at issue in our present case. As the court in *Heiden* noted, the officers were not engaged in a criminal investigation when the question was asked. *Id.* at *17. They had no reason to believe Heiden was involved in any kind of criminal activity. *Id.* at *18. There was no indication the officer expected to receive an incriminating response to his question of Heiden, and I think it doubtful a court would find he should have known the question was reasonably likely to elicit such a response. *Cruz*, 461 S.W.3d at 536-37.

The court's discussion in *Alford* regarding the parameters of custodial questions reasonably related to a legitimate administrative concern also is instructive. 358 S.W.3d at 654-55. The court there cited *Townsend v. State,* 813 S.W.2d 181,186 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd), in which the court of appeals held that questions regarding a suspect's name, address, weight, height, place of employment or physical disabilities were "normally attendant to arrest and custody." The court contrasted those with the questions asked of the defendant in *Branch v. State*, 932 S.W.2d 577, 581 (Tex. App.—Tyler 1995, no pet.), which included a question asking "whether he had drunk an alcoholic beverage." Those questions, the Tyler court held, amounted to custodial interrogation of the defendant, who was convicted of driving while intoxicated.

The Tyler court in *Branch*, 932 S.W.2d at 581, also found the trooper's inquiry "about Branch's physical condition, asking whether he suffered from any physical maladies such as diabetes, epilepsy or bodily injuries" to be "necessary in arrest

9

situations to enable authorities to provide for and be aware of any special physical needs a suspect might have[.]" The court of appeals properly found such questions did not constitute interrogation. *Id.,* citing *Sims v. State*, 735 S.W.2d 913, 917-18 (Tex. App.—Dallas 1987, pet. ref'd). Such questions designed to learn of a suspect's "physical disabilities" or "physical condition," should be distinguished from Ragan's question specifically asking whether appellant had engaged in conduct that violated the penal code. *See Cruz,* 461 S.W.3d at 542 (listing, among factors for consideration, "the relationship between the question asked and the crime the defendant was suspected of committing") (citation omitted).

I would hold Ragan's questioning of appellant constituted custodial interrogation, *Alford,* 358 S.W.3d at 661. Because appellant's statement was not recorded in compliance with article 38.22, I would hold the trial court erred by failing to suppress the statement. *Johnson v. State,* No. 06-13-00129-CR, 2014 Tex. App. LEXIS 8594, at *10 (Tex. App.—Texarkana Aug. 7, 2014, pet. ref'd) (mem. op., not designated for publication).

Nor can I agree with a conclusion the court's denial of appellant's motion to suppress was harmless. "Article 38.22, section 3 of the code of criminal procedure is a procedural evidentiary rule rather than a substantive exclusionary rule." *Davidson v. State,* 25 S.W.3d 183, 186 (Tex. Crim. App. 2000); *Oxford v. State,* No. 2-07-199-CR, 2009 Tex. App. LEXIS 2074 (Tex. App.—Fort Worth, March 19, 2009, no pet.) (mem. op., not designated for publication). Accordingly, Rule of Appellate Procedure 44.2(b) applies to the harm analysis. *Oxford*, 2009 Tex. App. LEXIS 2074 at *8. Under that standard, we are to disregard any error "that does not affect substantial rights." TEX. R.

APP. P. 44.2(b). In contexts such as this, not involving a jury proceeding, to determine whether an error affected substantial rights, the Court of Criminal Appeals has considered "whether a party had a right to that which the error denied." *Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002).

Appellant pled guilty after the denial of his motion to suppress his statement. In other cases involving pleas of guilty after the erroneous denial of motions to suppress, Texas courts have presumed that the denial of the motion to suppress influenced the defendant's decision to plead guilty, and found the denial reversible error, so long as the evidence that should have been suppressed "would in *any* measure inculpate the accused." *Paulea v. State,* 278 S.W.3d 861, 867 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citations omitted). Those cases typically have involved violations of constitutional rights and the harm standard of rule 44.2(a), but the same result should obtain in this case under the rule 44.2(b) standard. *See McKenna v. State*, 780 S.W.2d 797, 799 (Tex. Crim. App. 1989) (discussing prerogative of the defendant, on advice of counsel, to assess the strength of case against him and relative strength of his own case, in decision "whether to put the State to its proof," *quoting Kraft v. State*, 762 S.W.2d 612, 615 (Tex. Crim. App. 1988)).

The statement that should have been suppressed directly inculpated appellant in the offense of tampering with evidence. *See Rabb,* 434 S.W.3d at 617. Without appellant's admission to Ragan, the evidence adduced at the motion to suppress hearing indicated only that other officers, on entering appellant's bedroom, saw appellant "what they believed, to ingest methamphetamine," and found there "[a] little baggy with substance, methamphetamine, and a methamphetamine pipe and some

11

prescription pills."[7]  As have this and other courts in comparable situations, I would find the erroneous denial of his motion to suppress the statement influenced appellant to plead guilty.  *See Paulea,* 278 S.W.3d at 867; *Woodberry v. State,* 856 S.W.2d 453, 458 (Tex. App.—Amarillo 1993, no pet.) (trial court's denial of motion to suppress evidence "undoubtedly contributed in some measure to the State's leverage in the plea bargaining process, and may well have contributed to appellant's decision to relinquish his rights and plead guilty.  In our view, the evidence sought to be suppressed was 'used' in obtaining appellant's confession") (internal citation omitted).  *See also Holmes v. State,* 323 S.W.3d 163, 174 (Tex. Crim. App. 2010) (op. on reh'g) (similar conclusion after erroneous denial of pretrial motion to allow cross-examination of State's expert); *Clement v. State,* 461 S.W.3d 274, 282-83 (erroneous denial of motion to suppress followed by stipulation similarly harmful).  The trial court's error affected appellant's substantial rights.

For these reasons, I would sustain appellant's second issue, reverse the trial court's judgment and remand this cause for further proceedings.  I respectfully dissent from the Court's judgment affirming the conviction.

James T. Campbell
Justice

Publish.

---

[7] To convict appellant of the offense of tampering with physical evidence, the State would have had to prove that:  (1) knowing that an investigation or official proceeding is pending or in progress; (2) appellant intentionally and knowingly concealed a thing, to wit: methamphetamine; and (3) with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. *Williams v. State,* 270 S.W.3d 140, 142 (Tex. Crim. App. 2008) (citing TEX. PENAL CODE ANN. § 37.09).